# **EXHIBIT B**

# SEPARATION AGREEMENT AND RELEASE

This Separation Agreement and Release ("Agreement") is made and entered into by and between Joseph F. Walland, Jr. ("Walland"), whose residence is 1114 Via Mil Cumbres, Solana Beach, California 92075, and Medtronic, Inc., by and on behalf of itself and any affiliate or subsidiary company, including Medicrea USA, Corp., that is the common law employer of Walland (collectively, "Medtronic").

**WHEREAS,** Walland was employed as a Medicrea Chief Executive Officer at Medicrea USA, Corp. and/or its affiliates ("Medicrea");

**WHEREAS,** Medtronic acquired complete ownership and control of the capital and business (including goodwill, trade secrets and other confidential or proprietary business information) of Medicrea (the "Transaction");

**WHEREAS,** the Transaction closed on or about November 13, 2020;

**WHEREAS,** Walland entered into an Employment Agreement with Medicrea on July 30, 2018 (the "Medicrea Employment Agreement") that, among other things, provides Walland with agreed upon compensation in the event Walland terminates his employment before July 1, 2021, as a result of, and within six (6) months of, a Change in Control (as that term is defined in the Medicrea Employment Agreement);

**WHEREAS,** by virtue of the Transaction, Walland and Medtronic agree that a Change in Control (as that term is defined in the Medicrea Employment Agreement) has occurred and wish to provide for the termination of Walland's employment relationship with Medtronic (including any affiliate or subsidiary thereof) and all agreements (except the Medicrea Employment Agreement referenced in Article 4) that may have existed between them, and fully and finally resolve any and all matters arising out of Walland's employment by Medtronic (including any affiliate or subsidiary thereof) or the termination thereof, without any admission of any kind by either party; and

**WHEREAS,** the parties wish to document their understanding and agreement with respect to the terms of Walland's separation from employment with Medtronic (including any affiliate or subsidiary thereof) upon a Change in Control (as that term is defined in the Medicrea Employment Agreement).

**NOW, THEREFORE,** in consideration of the provisions and agreements set forth hereinafter, and for good and valuable consideration, the sufficiency of which is acknowledged by both parties, the parties agree as follows:

**Article 1.    Termination of Employment.**

**1.1**   **Termination Date.**  Walland has voluntarily agreed to terminate his employment with Medtronic (including any affiliate or subsidiary thereof) effective December 10, 2020 ("Termination Date").

1

1.2 **Benefits Upon Termination of Employment.** Whether or not Walland signs this Agreement, the following terms will apply:

(a) **Paid Time Off Pay.** If Walland is eligible to receive vacation under Medicrea policy, Walland shall receive compensation for accrued and unused vacation as outlined in the applicable policy and the Medicrea Employment Agreement.

(b) **Medical Benefits.** As provided by COBRA, Walland shall have the right to continue coverage in the medical plan(s) in which he is presently participating, in accordance with state and federal law.

(c) **Incentive Pay.** Walland's eligibility to receive a bonus, if any, will be determined by the terms of the applicable incentive plan and the Medicrea Employment Agreement.

1.3 **Agreement Not to Affect Benefits.** This Agreement shall not in any way impair any existing rights of Walland with respect to pension, retirement and/or other employee benefit plans of Medtronic or Medicrea applicable to former employees.

1.4 **Company Property and Credit Cards.** Walland acknowledges that he has returned all records or business documents, whether in electronic or hard copy, or any other materials provided by Medtronic (including any affiliate or subsidiary thereof) or obtained as a result of Walland's employment with Medtronic (including any affiliate or subsidiary thereof), or created by Walland while employed by or rendering services to Medtronic (including any affiliate or subsidiary thereof), including any proprietary or confidential information and documents. Walland also acknowledges that he has returned all company property, including but not limited to cellular phones, handheld electronic devices, credit cards, calling cards, keys, computers, employment badges and any company provided hardware and software. Walland also acknowledges that he has submitted all outstanding charges on any company credit card(s) for either reimbursement or payment.

## Article 2.   Termination Benefits.

2.1 **Lump Severance Sum Payment.** As consideration for the terms and provisions of this Agreement and consistent with the provisions described in Walland's Medicrea Employment Agreement, Medtronic agrees to pay to Walland a lump sum amount of Eighty-One Thousand Two Hundred Fifty Dollars and No Cents ($81,250.00) (less standard federal and state withholdings and authorized deductions), which is an amount equal to three (3) months' salary at Walland's current base salary. Payment of this lump sum amount will be made as soon as administratively feasible following the expiration of the revocation period set forth in Article 3, provided Walland signs and does not revoke this Agreement, and has returned all company property and ensured payment of all company credit cards, as provided in Section 1.4.

2.2 **Additional Payment.** As additional consideration for the terms and provisions of this Agreement, Medtronic agrees to pay to Walland an additional lump sum amount of Fifty Thousand Dollars ($50,000.00) (less standard federal and state withholdings and

authorized deductions). Payment of this lump sum amount will be made as soon as administratively feasible following the expiration of the revocation period set forth in Article 3, provided Walland signs and does not revoke this Agreement, and has returned all company property and ensured payment of all company credit cards, as provided in Section 1.4.

**2.3** **Non-Required Benefits.** Walland acknowledges that by accepting the provisions of this Agreement, Walland is receiving certain benefits to which he would not otherwise be entitled.

**Article 3.    Release.**

**3.1** In consideration of the provisions of this Agreement, Walland, for himself and his heirs and executors, fully and completely releases and forever discharges Medtronic, its officers, directors, shareholders, board members, representatives, divisions, parents, subsidiaries, affiliates, successors and assigns, employees and agents, of and from any and all claims, complaints, causes of action, demands, sums of money, covenants, contracts, agreements, promises, liabilities, suits, debts, damages or judgments, whatsoever in law or in equity, which Walland, ever had, now has against Medtronic or which he, hereafter, can, shall, or may have, whether known or unknown, for or by reason of or in connection with any actions, conduct, decisions, behavior, events, transactions, omissions or accounts, occurring to the date of this Agreement. Walland waives and releases any claim that the restrictions in Section VII of the Medicrea Employment Agreement are not reasonable and enforceable as written, and acknowledges that these post-employment restrictions (concerning, for example, Confidential Information, Non-competition, and Non-solicitation obligations entered into and to be enforced pursuant to New York law) shall survive this Release and remain in effect in accordance with their terms (hereafter referred to as the "Surviving Protective Covenants").

Walland acknowledges that this Release specifically covers, but is not limited to, any and all claims, complaints, causes of action or demands (including related attorneys' fees and costs) which he has or may have against Medtronic relating in any way to the terms, conditions and circumstances of his employment and the termination, resignation and/or retirement thereof, whether based on statutory or common law claims for wrongful discharge, breach of contract, breach of any express or implied promise, misrepresentation, fraud, retaliation, breach of public policy, infliction of emotional distress, defamation, promissory estoppel, invasion of privacy, or employment discrimination, including but not limited to claims under the Federal Age Discrimination in Employment Act (29 U.S.C. Sec. 621, et seq.) ("ADEA"), Older Workers Benefit Protection Act ("OWBPA"), the Family Medical Leave Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), Employee Retirement Income Security Act, the Sarbanes-Oxley Act of 2002 and federal and state statutes, if any, addressing the same subject matters (including, without limitation, the Fair Employment and Housing Act), violation of the California Labor Code (including, without limitation, sections 210, 216, 226(e), 558 and 2699 thereof), California Government Code or California Business and Professions Code (including, without limitation, Section 17200 thereof or any unfair business practices claims) or any other theory or basis, whether legal or equitable, except that Walland does

not release any claims that may not be released herein as a matter of law, including but not limited to claims for indemnity under California Labor Code Section 2802, claims that may be adjudicated before the California Workers' Compensation Appeals Board, claims for vested benefits including as set forth in Section 1.3 of this Agreement and claims as set forth in Section 3.2 of this Agreement. Walland specifically acknowledges that he has been paid for all hours worked (including overtime) to which he is entitled. Nothing in this Agreement shall be interpreted to require Walland to release any claims that cannot lawfully be released.

3.2   **Protected Rights.** Walland expressly acknowledges that nothing in this Agreement relinquishes any protected rights he may have under Title VII of the Civil Rights Act of 1964, the Equal Pay Act ("EPA"), the National Labor Relations Act, the ADA, the OWBPA, the ADEA, or the Securities and Exchange Commission Act of 1934 to file a charge, testify, assist or participate in any manner in an investigation, hearing or proceeding (including providing documents or other information) conducted by the Equal Employment Opportunity Commission, the Office of Federal Contract Compliance, the National Labor Relations Board, the United States Securities and Exchange Commission (SEC), or any other government agency. Furthermore, nothing in this Agreement prevents Walland from exercising his rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees. However, by signing this Agreement, Walland is waiving his right to recover any individual relief (including back pay, front pay, reinstatement or other legal or equitable release) in any charge, complaint, or lawsuit or other proceeding brought by Walland or on his behalf by any third party, except for any right Walland may have to receive a payment from the SEC (and not Medtronic) for information provided to the SEC.

**Walland does hereby waive any rights and benefits granted him pursuant to California Civil Code Section 1542 which provides in relevant part: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."**

**Notwithstanding the provisions of Section 1542 and for the purposes of implementing a full and complete release, discharge and hold harmless, Walland expressly acknowledges that this release, discharge and hold harmless is intended to include all claims which Walland does not know or suspect to exist in his favor at the time of his signature, and that this release, discharge and hold harmless will extinguish any such claim.**

**Walland agrees that he will not file or permit any other person to file a claim on Walland's behalf, with any judicial body, administrative agency or arbitrator, any claim or cause of action herein released.**

3.3   **Notice of Rights of Review and Rescission.** Walland acknowledges receipt of this Agreement as notice in writing from Medtronic advising him to consult with an attorney prior to executing this Agreement and further acknowledges that he has been provided the right to consider this Agreement, including the release delineated in this section, for a period of twenty-one (21) days prior to executing same. The parties acknowledge that

Walland has seven (7) days from the date of execution of this Agreement to revoke same, and that this entire Agreement shall not be effective or enforceable in whole or in part until the revocation period has expired. If Walland chooses to revoke this Agreement within seven (7) days of execution, such revocation shall apply to the entire Agreement, and it is understood and agreed that such revocation shall render this entire Agreement null and void. To be effective, the rescission must be in writing and delivered by hand or mailed to Grace Cargill, Senior Employee Relations Specialist, Attn: Brenda Hannigan-Tosney, 8200 Coral Sea Street NE, MVS14 Mounds View, MN 55112. If mailed, the rescission must be (a) postmarked within the seven-day revocation period; (b) properly addressed to Grace Cargill; and (c) sent by certified mail, return receipt requested. If Walland accepts this Agreement, the signed Agreement should be postmarked or returned by the close of the twenty-first day of the consideration period, to Grace Cargill at the address stated herein.

**Article 4.    General Provisions.**

**4.1**   **Binding Effect; Assignment.** The rights and obligations of this Agreement shall bind and inure to the benefit of any successor of Medtronic by reorganization, merger or consolidation, or any assignee of all or substantially all of Medtronic's business. Medtronic shall retain and be entitled to enforce the Surviving Protective Covenants for the benefit of itself and any affiliates, successors, and assigns. Medtronic may assign its rights and obligations under this Agreement to any of its subsidiaries or affiliates without Walland's consent, but shall remain liable for any payments provided hereunder that are not timely made by any such assignee. Walland's rights or obligations under this Agreement may not be assigned by Walland.

**4.2**   **Deductions for Amounts Owed to Medtronic.** By signing this Agreement, Walland expressly authorizes Medtronic to make deductions from any amounts paid under this Agreement for any monies Walland owes to Medtronic, including but not limited to amounts owed under any (i) relocation expense arrangement, (ii) hiring bonus arrangement, (iii) tuition reimbursement program, (iv) any other program or loan which provides for Walland's reimbursement of amounts to Medtronic, draws or other funds advanced to Walland that were not yet earned, or any other overpayment of compensation or benefits to Walland, in any form. Such deductions will be made to the extent permitted by applicable law from any amounts owed to Walland including, but not limited to, amounts paid under this Agreement, base salary, commission, bonus, vacation pay, or expense reimbursement. Any amounts that Walland still owes after such offset must be paid within thirty (30) days of the Termination Date. A material purpose of this Agreement is to avoid disputes over the enforceability of the Surviving Protective Covenants as written and to ensure Walland's compliance with them. Medtronic's agreement to pay Walland the full amount provided for in Section 2.2, and Walland's agreement not to contest the enforceability of the Surviving Protective Covenants are mutually dependent items of consideration. Accordingly, in the event the enforceability of the Surviving Protective Covenants are challenged and found unenforceable by any binding legal authority in any part deemed material by Medtronic, Medtronic shall have the right to demand and receive from Walland a return of up to 80% of the monetary value of the consideration paid to

Walland under Section 2.2 above. This partial return of consideration shall not affect the enforceability of any other term or condition of this Agreement.

4.3   **Cooperation with Employer.** Walland acknowledges that Medtronic may need to consult with Walland from time to time on a reasonable basis after the Termination Date on matters that Walland had worked on prior to the Termination Date. Walland agrees to fully cooperate with Medtronic and to provide any such information as is reasonably required by Medtronic, and further agrees to fully cooperate with Medtronic in the investigation, prosecution and/or defense of any potential claims or concerns regarding the business of Medtronic about which he has relevant knowledge, including by providing truthful information and testimony as reasonably requested by Medtronic. Walland acknowledges that he has fully and truthfully disclosed to Medtronic any and all concerns related to his employment and/or any alleged or perceived violation by Medtronic, its agents or employees of Medtronic's Code of Conduct or its Business Conduct Standards or any applicable legal, regulatory or quality requirements. Nothing in this Section is intended to limit Walland's rights to file charges or participate in government investigations, as outlined in Section 3.2.

4.4   **Future Conduct and Non-Disparagement.** Walland agrees not to engage in any form of conduct, or make any statements or representations, that disparage or otherwise harm the reputation, goodwill or commercial interests of Medtronic or its management. Walland further agrees to refrain from making any disparaging, derogatory or otherwise negative comments or statements about Medtronic to any person, including specifically but not limited to, any person affiliated in any way with any actual or potential employee, customer, vendor or competitor of Medtronic or any member of the medical, business, professional or scientific community with whom Medtronic has had or, to Walland's knowledge, has contemplated a business, professional, or scientific relationship. Nothing in this Section is intended to limit Walland's rights to file charges or participate in government investigations, as outlined in Section 3.2.

4.5   **Confidentiality and Non-Disclosure.** Walland agrees not to reveal, publish, disseminate or discuss any or all of the background, negotiations or terms and conditions of this Agreement except to Walland's spouse, attorney, accountant or as may be required by law. It is expressly understood that any violation of this provision constitutes a material breach of this Agreement. Nothing in this Section is intended to limit Walland's rights to file charges or participate in government investigations, as outlined in Section 3.2.

4.6   **Voluntary Agreement.** The parties acknowledge that they have been provided a full opportunity to review and reflect upon the terms of this Agreement and to seek advice of legal counsel of their choice and that their signatures are freely, voluntarily and knowingly given.

4.7   **Entire Agreement.** The parties agree that, except as it relates to the Surviving Protective Covenants and related provisions of the Medicrea Employee Agreement executed by Walland and governing Walland's obligations to Medtronic (including any affiliate or subsidiary thereof) regarding confidential information, inventions, documents, and tangible things, post-employment restrictions and choice of law, and except as it relates to agreements related to the grant of any stock award, stock option or promissory note, or any

other agreements related to the acquisition of Medicrea to which Walland was a party or beneficiary, this Agreement supersedes any prior arrangements, agreements or contracts, whether written, oral or implied (in law or fact), between them and contains the entire understanding and agreement between the parties and cannot be amended, modified or supplemented in any respect, except by a subsequent written agreement executed by both parties.

**4.8**   **Choice of Law.**   Except as otherwise expressly indicated with respect to the Surviving Protective Covenants, this Agreement shall be governed by the laws of the State of California, without respect to conflict of law principles.

**4.9**   **Headings.**   The titles and subtitles of the various sections and paragraphs of this Agreement are inserted for convenience and shall not be deemed to affect the meaning or construction of any of the terms, provisions, covenants and conditions of this Agreement.

**WHEREFORE**, the parties execute this Agreement effective the date set forth below.

**MEDTRONIC, INC.**

_____          _____
Joanne Leith                                              Joseph F. Walland, Jr.
Senior Employee Relations Director

Date: _____              Date: January 7, 2021

7